### UNITED STATES  DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**TERRELL ANDERSON**                                   **CIVIL ACTION**

**versus**                                                        **NO. 13-2319**

**EDWARD KNIGHT, WARDEN**                    **SECTION: "E" (3)**

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Terrell Anderson, is a state prisoner incarcerated at the Riverbend Detention Center, Lake Providence, Louisiana.  On September 29, 2008, he was convicted of armed robbery with a firearm under Louisiana law.[1]  On February 11, 2009, he was sentenced to a term of twenty-five years imprisonment without benefit of probation, parole, or suspension of sentence.[2]

---

[1] State Rec., Vol. II of III, transcript of September 29, 2008, p. 52; State Rec., Vol. I of III, minute entry dated September 29, 2008; State Rec., Vol. I of III, jury verdict form.

[2] State Rec., Vol. II of III, transcript of February 11, 2009, p. 6; State Rec., Vol. I of III, minute entry dated February 11, 2009.

The Louisiana Fourth Circuit Court of Appeal affirmed his conviction on March 24, 2010,[3] and the Louisiana Supreme Court denied his related writ application on November 24, 2010.[4]

On December 20, 2011, petitioner filed a post-conviction application with the state district court.[5]  That application was denied on the merits on January 12, 2012.[6]  His related writ applications were likewise denied by the Louisiana Fourth Circuit Court of Appeal on March 16, 2012,[7] and by the Louisiana Supreme Court on September 21, 2012.[8]

On March 21, 2013, petitioner filed the instant federal application seeking *habeas corpus* relief.[9]  The state filed a response arguing that the federal application is untimely,[10] and petitioner filed a reply to the state's response.[11]  For the following reasons, the Court finds that the application is in fact untimely and should be dismissed on that basis.[12]

---

[3] State v. Anderson, No. 2009-KA-623, 2010 WL 8972085 (La. App. 4th Cir. Mar. 24, 2010); State Rec., Vol. I of III.

[4] State v. Anderson, 50 So.3d 825 (La. 2010) (No. 2010-K-0955); State Rec., Vol. I of III.

[5] State Rec., Vol. I of III.

[6] State Rec. Vol. I of III, Judgment dated January 12, 2012.

[7] State v. Anderson, No. 2012-K-0318 (La. App. 4th Cir. Mar. 16, 2012); State Rec., Vol. I of III.

[8] State *ex rel.* Anderson v. State, 98 So.3d 330 (La. 2012) (No. 2012-KH-0928); State Rec., Vol. I of III.

[9] Rec. Doc. 1.

[10] Rec. Doc. 17.

[11] Rec. Doc. 22.

[12] The Court notes that petitioner also filed a "Motion for Summary/Default Judgement," arguing that the state failed to file a timely response to his federal application.  Rec. Doc. 20.  He is incorrect.  The Court extended the state's deadline for filing a response until October 23, 2013, Rec. Doc. 16, and the state's response was filed by that deadline.  Accordingly, that motion should be denied.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his underlying criminal judgment became "final."[13]  Regarding finality, the United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court.  Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003).

Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008).

As noted, the Louisiana Supreme Court denied petitioner's writ application on direct review on November 24, 2010. As a result, for AEDPA purposes, his state criminal judgment became final, and his federal limitations period therefore commenced, on February 22, 2011.  See id. at 317-18.  That limitations period then expired one year later, unless the deadline was extended through tolling.

The Court first considers statutory tolling.  Regarding the statute of limitations, the AEDPA expressly provides:  "The time during which a properly filed application for State

---

[13]  Although 28 U.S.C. § 2244(d)(1) has alternative provisions providing for other events which can trigger the commencement of the statute of limitations, those alternative provisions are not applicable in the instant case.

post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

      After three hundred (300) days elapsed, petitioner tolled the federal limitations period on December 20, 2011, by filing his post-conviction application with the state district court.[14] Although that application was denied on January 12, 2012,[15] statutory tolling continued uninterrupted for the duration of the post-conviction proceedings, so long as he sought supervisory review in a timely manner. Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-70 (5th Cir. 2004). Therefore, the Court must determine whether petitioner's related writ applications were timely filed with the Louisiana Fourth Circuit Court of Appeal and the Louisiana Supreme Court.

---

[14] State Rec., Vol. I of III. Federal *habeas* courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system." Causey v. Cain, 450 F.3d 601, 607 (5th Cir. 2006). Because that date cannot be gleaned from the state court record with respect to this state application, the Court will simply use the date the application was notarized as the filing date, in that the application obviously was placed in the mail no earlier than the date it was notarized.

      Out of an abundance of caution, the Court further notes that, prior to filing his post-conviction application, petitioner had filed motions for the production of documents. However, motions seeking transcripts or other documents are not considered "application[s] for State post-conviction or other collateral review" for tolling purposes because they are preliminary in nature and do not directly call into question the validity of a petitioner's conviction or sentence. Higginbotham v. Tanner, Civ. Action No. 10-1130, 2011 WL 3268128, at *1 (E.D. La. July 29, 2011); Parker v. Cain, Civ. Action No. 02-0250, 2002 WL 922383, at *2 n. 22 (E.D. La. May 1, 2002), certificate of appealability denied, No. 03-30107 (5th Cir. June 23, 2003); Boyd v. Ward, Civ. Action No. 01-493, 2001 WL 533221, at *4 (E.D. La. May 15, 2001), certificate of appealability denied, No. 01-30651 (5th Cir. Aug. 22, 2001).

[15] State Rec. Vol. I of III, Judgment dated January 12, 2012.

After the state district court denied relief on January 12, 2012, petitioner had thirty days to seek review by the Louisiana Fourth Circuit Court of Appeal.  See Louisiana Uniform Rules of the Courts of Appeal Rule 4-3; see also Melancon v. Kaylo, 259 F.3d 401, 404-06 (5th Cir. 2001); Campbell v. Cain, Civ. Action No. 06-3983, 2007 WL 2363149, at *3 & n.24 (E.D. La. Aug. 15, 2007).  Because he filed his writ application on or after February 28, 2012, that application would at first blush appear to be untimely.[16]  However, the Court of Appeal did *not* deny the writ application as untimely; rather, the court expressly denied petitioner's claims on the merits, holding: "This Court finds no error in the judgment of the district court denying relator's application for post-conviction relief."[17]

In Grillette, the United States Fifth Circuit Court of Appeals faced a similar scenario and found that tolling continued uninterrupted.  The Fifth Circuit held:

> [A]t no point did the state trial court or the Louisiana Court of Appeal fault Grillette for failure to comply with Rule 4-3.  Whereas in Melancon, the Louisiana Court of Appeal expressly indicated that Melancon's application "appeared untimely," in this case it is undisputed that the Louisiana Court of Appeal disposed of Grillette's application "on the merits," without any notation that his application was time-barred.  We acknowledge, as the State asserts, that a state court's consideration of an application "on the merits" is not by itself conclusive proof that the application was timely filed in accordance with that state's timeliness laws and rules and thus "pending."  See [Carey v.] Saffold, 536 U.S. [214,] 226, 122 S.Ct. 2134 [(2002)]

---

[16]  Petitioner has acknowledged that his writ application was not filed before the thirty-day deadline elapsed.  In fact, his writ application was accompanied by a "Motion Seeking Out of Time Judicial Review" dated February 28, 2012, explaining his reasons for failing to meet the deadline. State Rec., Vol. III of III.

[17]  State v. Anderson, No. 2012-K-0318 (La. App. 4th Cir. Mar. 16, 2012); State Rec., Vol. I of III.

(noting different reasons why a court might "address the merits of a claim that it believes was presented in an untimely way").  Rule 4-3, however, prohibits the Court of Appeal from considering the merits of an application that is not filed with the appellate court within the original or extended return date, "in the absence of a showing that the delay in filing was not due to the applicant's fault."  Because the Court of Appeal did consider the merits of Grillette's application, it must have determined that the application was timely either because the trial court impliedly extended the return date and/or because the delay was not due to Grillette's fault.

Moreover, as Grillette correctly points out, when the denial of an application is based on untimeliness, Louisiana courts routinely and unmistakably indicate so in their opinions.  See, e.g., Carter v. Rhea, 785 So.2d 1022, 1022 (La.Ct.App. 4th Cir. 2001) ("WRIT APPLICATION DISMISSED AS UNTIMELY."); Lawyer v. Succession of Kountz Through Cupit, 703 So.2d 233, 233 (La.Ct.App. 4th Cir. 1997) ("WRIT NOT CONSIDERED."); Watts v. Dorignac, 681 So.2d 955, 955 (La.Ct.App. 1st Cir. 1996) ("WRIT NOT CONSIDERED").  Thus, had the Louisiana Court of Appeal decided to reach the merits of the application notwithstanding a determination that the application was untimely, it appears that the court would have indicated any such untimeliness in its opinion.

Grillette, 372 F.3d at 775.

This Court should not unilaterally ignore the presumptions employed in Grillette.

Bourgeois v. Bergeron, Civ. Action No. 09-3185, 2009 WL 5088756, at *4 (E.D. La. Dec. 23, 2009).

Therefore, out of an abundance of caution, the Court will assume that petitioner is entitled to

statutory tolling from December 20, 2011, the date the post-conviction application was filed, until

at least the point at which his deadline expired for seeking review by the Louisiana Supreme Court.

After the Louisiana Fourth Circuit Court of Appeal denied relief on March 16, 2012,[18]

petitioner then had only thirty days to seek review of that judgment by the Louisiana Supreme Court.

---

[18]  State v. Anderson, No. 2012-K-0318 (La. App. 4th Cir. Mar. 16, 2012); State Rec., Vol. I of III.

Louisiana Supreme Court Rule X, § 5(a). Therefore, his deadline for seeking review expired on April 16, 2012.[19] Here, petitioner's Louisiana Supreme Court writ application was clearly filed late, in that it was accompanied by a filing sheet he signed on April 20, 2012, and was mailed in an envelope metered on that same date.[20]

If petitioner is perhaps contending that the lateness of that filing was excused by the Louisiana Supreme Court, that contention is seemingly foreclosed by federal precedent. When the Louisiana Supreme Court acted on petitioner's writ application, it simply issued an one-word judgment: "Denied."[21] In Butler v. Cain, 533 F.3d 314 (5th Cir. 2008), a case interpreting the meaning of a similar one-word denial issued by the Louisiana Supreme Court with respect to an untimely writ application, the United States Fifth Circuit Court of Appeals held that the presumption is that such a one-word judgment is a decision denying the writ as *untimely*, not a decision on the merits. The Fifth Circuit reasoned:

> The Louisiana Supreme Court's 1999 order contains only one word: "denied." See State v. Butler, 734 So.2d 1222. Butler argues that a simple "denied" cannot be based on untimeliness, relying in part on our statement in 2004 that "when the denial of an application is based on untimeliness, Louisiana courts routinely and unmistakably indicate so in their opinions." Grillette v. Warden, 372 F.3d 765, 775 (5th Cir. 2004). In Grillette, though, we were evaluating solely the practice of the Louisiana Court of Appeal under

---

[19] Because the thirtieth day of that period here fell on a Sunday, petitioner had until the following Monday, April 16, 2012, to file a writ application in the Louisiana Supreme Court. See La. Code Crim. P. art. 13; La. Rev. Stat. Ann. § 1:55.

[20] See State Rec., Vol. III of III.

[21] State ex rel. Anderson v. State, 98 So.3d 330 (La. 2012) (No. 2012-KH-0928); State Rec., Vol. I of III.

a rule applicable only to it and not to the state's Supreme Court; we cited only intermediate court opinions for our conclusion.  See id. at 769-70.  Conversely, in a pre-Grillette opinion, we found that a single-word denial order from the Louisiana Supreme Court likely indicated untimeliness and not a merits decision.  Williams v. Cain, 217 F.3d 303, 304, 309 n.7 (5th Cir. 2000).

Butler also refers to numerous Louisiana Supreme Court orders which specifically stated that the application was "not considered, not timely filed."  See, e.g., State v. Baker, 939 So.2d 1269 (La. 2006); State v. Shannon, 766 So.2d 1261 (La. 2000); State v. Jones, 763 So.2d 586 (La. 2000).  However, those examples do not prove the negative, that the absence of such language when Butler's application was denied means that the merits were reached.[FN2]

> [FN2] A 2006 decision from this court cited Grillette and applied its disposition-on-the-merits assumption to a Louisiana Supreme Court "denial" order.  Causey, 450 F.3d at 606-07.  The assumption in Causey was more warranted than it is here.  There was good reason to believe that Causey's direct review application was actually timely and should have been considered on the merits.  Id. at 602.  This court's assumption that it was heard on the merits was therefore fully justified.  In contrast, Butler concedes that his direct review application was untimely filed.  Though Causey applied Grillette's assumption to the same order language that is at issue here, a case that predates Causey did not do so.  Williams, 217 F.3d at 309 n. 7.

Most persuasive to us, the Louisiana Supreme Court would have violated its own rule if it had considered Butler's petition on the merits.  A Louisiana Supreme Court rule requires that an "application seeking to review a judgment of the court of appeals," must be filed within thirty days; it specifies that "[n]o extension of time therefor will be granted."  La. Sup. Ct. R. X, § 5(a).  While another section of the Rule – Section 5(b) – allows the Supreme Court to extend the time for filings under the subsection "upon proper showing," that applies to narrow categories of applications that do not include cases such as Butler's.[FN3]

[FN3]    Section 5(b) describes the types of applications to which it applies:    "When an application is sought to review the action or inaction of a trial court in (a) a case in which the court of appeal does not have supervisory jurisdiction, i.e., a criminal case in which a death sentence has been imposed or in which a conviction and sentence were imposed before July 1, 1982, or (b) a case in which the court of appeal has supervisory jurisdiction but the applicant seeks to file an application directly or simultaneously in this court (which application will not ordinarily be considered by this court absent extraordinary circumstances)...."

One of our opinions dealt with an extension and does not indicate that it was granted pursuant to Section 5(b).  Hughes v. Cain, 249 Fed. Appx. 340, 341 (5th Cir. 2007) (unpublished).  The record in that case reveals that Hughes had filed one of the types of applications to which Rule 5(b) applies.  See Appellee's Resp. to Court Order, No. 06-30561, docket entry of 2/12/07 at 2-3. The Appellee's response makes clear that the "routine[ ]" granting of extensions to which the opinion refers occurs "where simultaneous filings have been made with the Supreme Court and a Court of Appeal" – a filing under Section 5(b), not 5(a).  Id. at 3.

Finally, there is no indication that the state court granted an extension or otherwise waived its own rule as to Butler.  Butler did not even request an extension of time to file his late direct review application.  He has not claimed that he received a letter from that court allowing a late filing such as did the defendant in Hill v. Cooper, 2007 WL 458207, No. 04-2588 (E.D. La. 2007).  We are not aware of any case in which the Louisiana Supreme Court *sua sponte* extended the amount of time in which to file under Rule X, § 5(a).  Contra Hughes, 249 Fed. Appx. at 341 (Hughes requested and received an extension under § 5(b)); McGee v. Cain, 104 Fed. Appx. 989 (5th Cir. 2004) (unpublished) (requested and did not receive an extension under § 5(a)); Hill, 2007 WL 458207 at *2 (requested and did receive an extension – unclear what basis).

We conclude that the Louisiana Supreme Court found Butler's application for further review of his conviction to be untimely.

Butler, 533 F.3d at 318-19.  The Court finds that the Butler presumption is applicable in this case.

In light of the foregoing, and because the United States Supreme Court has expressly held that *no* statutory tolling whatsoever is available for an untimely filing in state court,  Pace v. DiGuglielmo, 544 U.S. 408, 414 (2005),[22] the undersigned finds that statutory tolling ceased with respect to petitioner's post-conviction application on April 16, 2012, when his time expired for seeking timely review by the Louisiana Supreme Court of the Court of Appeal's denial of March 16, 2012.

At that point, for the reasons previously explained, three hundred (300) days of petitioner's federal limitations period had already elapsed, leaving only sixty-five (65) days remaining.  Accordingly, he had only until June 20, 2012, to file his federal application, unless the limitations period was again tolled.

Clearly, petitioner is not entitled to further statutory tolling under § 2244(d)(2), in that he had no other "application[s] for State post-conviction or other collateral review" pending prior to that deadline.

The Court must next consider equitable tolling.  The United States Supreme Court has expressly held that the AEDPA's statute of limitations is subject to equitable tolling.  Holland v. Florida, 560 U.S. 631, 645 (2010).  However, "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary

---

[22] In Pace, the United States Supreme Court held:  "When a postconviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2)."  Pace, 544 U.S. at 414.  Moreover, it has repeatedly been held that "a federal habeas petitioner receives no tolling credit whatsoever for an untimely Louisiana Supreme Court writ application."  Falkins v. Cain, Civ. Action No. 11-668, 2011 WL 3899096 (E.D. La. Aug. 16, 2011), adopted, 2011 WL 3898058 (E.D. La. Sept. 6, 2011).

circumstance stood in his way and prevented timely filing."  Id. at 649 (internal quotation marks omitted); see also Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be equitably tolled "in rare and exceptional circumstances"). Petitioner bears the burden of proof to establish entitlement to equitable tolling.  Alexander v. Cockrell, 294 F.3d 626, 629 (5th Cir. 2002).

In the instant case, petitioner argues that he is entitled to equitable tolling due to the fact that did not have adequate legal assistance to assist him in seeking post-conviction review. However, the Court rejects that argument, because it is clear that neither a petitioner's "*pro se* status nor his unfamiliarity with the law suffices as a basis for equitable tolling." Madden v. Thaler, 521 Fed. App'x 316, 323 (5th Cir. 2013); accord Nelson v. Quarterman, 215 Fed. App'x 396, 398-99 (5th Cir. 2007) ("[A] defendant's pro se status will not excuse an untimely habeas petition."); Felder v. Johnson, 204 F.3d 168, 171-72 (5th Cir. 2000) ("[P]roceeding pro se is not a 'rare and exceptional' circumstance because it is typical of those bringing a § 2254 claim. ...  [M]ere ignorance of the law or lack of knowledge of filing deadlines does not justify equitable tolling or other exceptions to a law's requirements.").

Lastly, the Court notes that petitioner suggests in passing that he is "actually innocent."[23]  It is true that the United States Supreme Court recently held:  "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar ... or, as in this case, expiration of the statute of limitations." McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013).  However, the Supreme Court took care to note:  "We caution ... that

---

[23]  Rec. Doc. 22, p. 1.

tenable actual-innocence gateway pleas are rare:   '[A] petitioner does not meet the threshold

requirement unless he persuades the district court that, in light of the *new* evidence, *no juror*, acting

reasonably, would have voted to find him guilty beyond a reasonable doubt.'"  <u>McQuiggin</u>, 133 S.Ct.

at 1928 (emphasis added) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 329 (1995)).  As the United States

Sixth Circuit Court of Appeals has explained:

> To assess that question, a court must survey "all the evidence, old and
> new, incriminating and exculpatory, without regard to whether it
> would necessarily be admitted under rules of admissibility that would
> govern at trial."  <u>House v. Bell</u>, 547 U.S. 518, 538, 126 S.Ct. 2064,
> 165 L.Ed.2d 1 (2006) (internal quotation marks omitted).  With "all
> the evidence" thus in mind, the court's final task is "to assess the
> likely impact of the evidence on reasonable jurors"; it is not to work
> through an "independent factual determination" to divine "what likely
> occurred."  <u>Id</u>. (internal quotation marks omitted).

<u>Eberle v. Warden, Mansfield Correctional Institution</u>, 532 Fed. App'x 605, 613 (6th Cir. 2013).

A logical starting point, therefore, is to look at the "old" evidence, i.e. the evidence

presented at trial and on which petitioner's conviction is based.  That evidence is recounted in the

Louisiana Fourth Circuit Court of Appeal's summary of the facts of this case on direct appeal:

> Nathaniel Williams' testimony established that at
> approximately twelve forty-five pm, on December 14, 2007, he was
> robbed at gun point while unloading his vehicle in front of his home
> on Cherry Street.  Mr. Williams reported to the police that the
> perpetrator was approximately eighteen to twenty-two years old,
> thinly built, light skinned, clean shaven with a fade hair cut,
> approximately five feet seven inches in height, around 150 pounds,
> with a gap in his front teeth, and wearing a black T-shirt.
> Officer Baldwin testified that he developed Mr. Anderson as
> a suspect on information from a confidential informant.  He then
> placed the defendant's photograph with five others to compile a
> photographic lineup.  On December 23, 2007, Detective Baldwin
> showed Mr. Williams the photographic lineup.  Mr. Williams
> examined the photographs, picked out the defendant's photograph and

signed the back of it, telling Detective Baldwin that the photograph depicted the perpetrator.[24]

The Court of Appeal further noted:

> In the present case, Mr. Williams testified unequivocally that the defendant was the man who robbed him. He said that as an assistant detention room supervisor employed by the Jefferson Parish, Department of Juvenile Services, he had occasion to deal with many young men as a part of his job. He stated that his job requires him to remember young men's faces, that he is good at remembering faces, and that he could give a good description. Additionally Mr. Williams noted, "I was very sure, very positive, because I could see the face, you know, I can still see the face, you know."[25]

The foregoing evidence is obviously compelling evidence of guilt. Moreover, petitioner has offered no new evidence whatsoever which would cast doubt on the verdict. Therefore, he has not made the required showing that, in light of new evidence, "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." McQuiggin, 133 S.Ct. at 1928.

Because petitioner is not entitled to further statutory tolling, and because he has not established that he is eligible for equitable tolling or that the McQuiggin "actual innocence" exception applies, his federal application for *habeas corpus* relief had to be filed no later than June 20, 2012, in order to be timely. His federal application was not filed until March 21, 2013,[26] and, therefore, it is untimely.

---

[24] State v. Anderson, No. 2009-KA-623, 2010 WL 8972085, at *1 (La. App. 4th Cir. Mar. 24, 2010); State Rec., Vol. I of III.

[25] Id. at *2.

[26] "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court." Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003). Petitioner has declared under penalty of perjury that his application was placed in the prison mail system on March 21, 2013. Rec. Doc. 1, p. 15.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that petitioner's "Motion for Summary/Default Judgement," Rec. Doc. 20, be **DENIED**.

**IT IS FURTHER RECOMMENDED** that his petition for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE** as untimely.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[27]

New Orleans, Louisiana, this fourteenth day of July, 2014.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[27] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.

- 14 -